

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
515 RUSK AVENUE, STE. 4636
HOUSTON, TEXAS 77002

CHAMBERS OF
MARVIN ISGUR.
UNITED STATES BANKRUPTCY JUDGE

September 20, 2024

Chief United States District Judge Randy Crane
Chambers of Judge Crane
1701 W. Business Highway 83, 9th Floor
McAllen, Texas 78501

Re: Referral of Jackson Walker LLP

Dear Chief Judge Crane,

I write pursuant to Rule 6 of the Disciplinary Rules of this District. Although Rule 6 deals with referrals of individual attorneys, I write to advise you that Jackson Walker LLP appears to have engaged in conduct that warrants disciplinary action. Rule 11 sanctions may be imposed against "attorneys, law firms or parties." FED. R. CIV. P. 11, as made applicable by FED. R. BANKR. P. 9011. Sanctions may be imposed under the Court's inherent powers "only when it finds fraud has been practiced upon it, or that the very temple of justice has been defiled." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 590 (5th Cir. 2008). If a law firm itself has engaged in such conduct, "... there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith." *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995).

## Background

The initial facts are, unfortunately, well-known to this Court. Elizabeth Freeman, a partner at Jackson Walker, had a secret intimate relationship and shared ownership of a home with then Bankruptcy Judge David Jones. This letter does not suggest that any sanctions are warranted against Jackson Walker because of that relationship itself. Rather, it appears that Jackson Walker breached its own ethical duties after it learned of the relationship. Breaches by the firm itself defiled "the very temple of justice."

I make this referral after having reviewed the facts as pled by Jackson Walker in proceedings filed against it by the United States Trustee. In those proceedings, the United States Trustee is seeking disgorgement or sanctions for fees paid to Jackson Walker.

Referral Letter to Chief Judge Randy Crane
Re: Jackson Walker LLP
September 20, 2024
Page 2

## Relevant Facts

These are the salient facts that I understand are not disputed by Jackson Walker:

- On May 14, 2018, Ms. Freeman was admitted as a Jackson Walker income partner.

- On January 1, 2021, Ms. Freeman was admitted as a Jackson Walker equity partner.

- On March 6, 2021, Jackson Walker was informed of an allegation that Ms. Freeman was in an intimate relationship with Judge Jones. The following day, Ms. Freeman acknowledged that she had been in a prior intimate relation with Judge Jones during her tenure at Jackson Walker. She denied a present relationship.

- On March 8, 2021, Jackson Walker forwarded an email to Judge Jones' chamber advising Judge Jones of the allegation.

- It appears that Jackson Walker did not advise its affected clients, the Court or opposing counsel of the truth of the allegations about the relationship.

- Jackson Walker immediately retained ethics counsel. At no point after retaining ethics counsel did Jackson Walker inform its affected clients, the Court or opposing counsel of the relationship.

- In one of its briefs defending against relief sought by the United States Trustee, Jackson Walker alleges that: "Yet, the day after learning of Mr. Van Deelen's March 6, 2021 allegations, JW affirmatively confronted Ms. Freeman and asked the very question that apparently was never asked of former Judge Jones. Ms. Freeman affirmatively denied the existence of any current intimate relationship to JW at this time, and continued to deny the existence of an ongoing intimate relationship until March 30, 2022, as discussed below." Once Jackson Walker learned from Ms. Freeman that there had been a prior relationship, its ability to defend its non-disclosure ended.

- A partner at Jackson Walker first learned that there was an ongoing relationship on February 1, 2022. Jackson Walker still made no disclosures to its clients, the Court or opposing counsel.

- On March 29, 2022 (56 days after its partner affirmatively learned of the ongoing relationship), Jackson Walker again asked Ms. Freeman about the relationship. The next day, Ms. Freeman confirmed the existence of the ongoing relationship. Jackson Walker still made no disclosures to its clients, the Court or opposing counsel.

Referral Letter to Chief Judge Randy Crane
Re: Jackson Walker LLP
September 20, 2024
Page 3

- Jackson Walker billed approximately $11 million in fees after March 30, 2022 on cases in which Judge Jones was a mediator or Judge. None of the Jackson Walker disclosures or fee applications identify the relationship.

- Ms. Freeman stayed at the firm through December 1, 2022. Between February 1, 2022 (when an independent partner of the firm knew of the ongoing relationship) and December 1, 2022, Jackson Walker made no disclosure to its clients, the Court or opposing counsel.

- During 2022, Ms. Freeman's counsel urged Jackson Walker to amend its disclosures to include references to Ms. Freeman's "close personal relationship" with Judge Jones. Jackson Walker concluded that the proposed amended disclosure did not make adequate disclosure. Rather than enhancing the disclosure so that it was complete, Jackson Walker elected to make no disclosure at all.

- Here are some highlights of actions taken by Jackson Walker on behalf of its clients, without disclosing the relationship to the clients:

    o *In re Basic Energy,* case 21-90002. On August 9, 2022, Jackson Walker filed a disclosure statement and an amended plan at ECF No. 1421. The Disclosure Statement was signed by one of the debtor's directors. It contains no disclosure of the relationship between Freeman and Jones. It does provide Jackson Walker with a release and with an exculpation. The release and exculpation are part of the confirmed plan, so may not be subject to any review (even based on fraud) under § 1144 of the Bankruptcy Code. Jackson Walker now relies on that release and exculpation to defend itself against charges made by the United States Trustee. [1]

    o *In re Strike, LLC., case 21-90054.* The Debtors filed a plan and disclosure statement on March 23, 2022 at ECF No. 898. The Disclosure Statement was later amended on May 16, 2022. It was signed by the Debtor's Senior Vice President and Treasurer. It contains no disclosure of the relationship between Freeman and Jones. It does provide Jackson Walker with a release and with an exculpation. The release and exculpation are part of the confirmed plan, so may not be subject to any review (even based on fraud) under § 1144 of the Bankruptcy Code. Jackson Walker now relies on that release and exculpation to defend itself against charges made by the United States Trustee.

---

[1] The release and exculpation in this and other cases do contain exceptions for willful misconduct, actual fraud, or gross negligence. It is possible that the exceptions preclude the defenses; but that potential neither justifies the failure to inform their client nor explains the current assertion of the defenses.

- *In re Sungard AS New Holdings LLC*, case 22-90018. Essentially the same pattern as the previous two cases.

- *In re GWG Holdings, Inc.*, case 22-90032. In this case, Judge Jones was appointed as a mediator on January 5, 2023. Jackson Walker served as Debtor's counsel. After Ms. Freeman's departure from Jackson Walker, the mediation agreement requested that Ms. Freeman serve as Trustee of the Wind Down Trust under the mediated agreement. She was appointed on June 20, 2023. Jackson Walker received both an exculpation and a release under the confirmed plan.

## Identification of Ethical Breaches

### Breaches to Clients

Jackson Walker could not have ethically determined that the facts that were known to it should be hidden from its clients. Non-disclosure was a firm decision—not the decision of a single lawyer or even a single practice group at Jackson Walker. It is inconceivable that Jackson Walker failed to inform its clients of the situation. After all, it was the firm's duty to place the interest of its clients above its own interest. But, Jackson Walker allowed its clients to affirm the completeness of disclosure statements, to pay Jackson Walker's fees, and to include exculpation and release clauses in confirmed bankruptcy plans all without informing the clients of the relevant facts. Some or all of the clients might have refused to do so for practical reasons. Others might have determined that their own ethical standards would not allow them to wander into the ethics quagmire precipitated by these events. But, Jackson Walker apparently did not inform its clients. I have concluded that Jackson Walker's deliberate failure to inform its clients was an ethical breach that we cannot excuse.

Conversely, I have recently held hearings in which I explicitly asked three potential recipients of any recovered funds whether they wished to pursue any recovery against Jackson Walker. To date, it appears that none of the three have decided to proceed. One has affirmatively made statements affirming that Jackson Walker performed its work admirably. Another has disclaimed any interest in proceeding. A third is not proceeding at this time, but considering matters. It is my present belief that an inquiry in all remaining cases should be made as to whether the parties who would be entitled to any proceeds are seeking any recovery.

I believe that these preliminary reactions should caution the Court to consider the appropriate remedy for the client disclosure breach.

### Breaches of Court Duties

Jackson Walker affirmatively decided to withhold disclosure from the Court. Its recent papers attack the ethics and asserted lies by its former partner, Ms. Freeman. But, when

Ms. Freeman's own lawyer suggested that the firm make a disclosure, Jackson Walker decided that the proposed disclosure was inadequate. Did it beef up the disclosure and make it? No, it did nothing to inform the Court. I reject the concept that Jackson Walker had no duty to inform the Court because Judge Jones, a judge on the Court, obviously knew. Jackson Walker acknowledges that the matter was being kept secret from the Court itself. Indeed, it appears that Jackson Walker's silence and discussions may have been in violation of the Texas Disciplinary Rules prohibiting the assistance of a judge from violating his own duties.

Throughout, it is apparent that Jackson Walker concluded that it had no duty of candor to this Court. It is intolerable that Jackson Walker protected the Jackson Walker firm to the exclusion of its inherent professional responsibilities.

**Breaches to Opposing Parties and Counsel**

With respect to opposing parties, Jackson Walker decided not to make disclosures as well. Jackson Walker had (perhaps unknowingly) made misleading or false representations to the Court and opposing counsel. When it learned the truth, it did nothing to correct its prior statements.

This issue may also require some caution. In most instances the creditors in cases are now in control of whether to bring actions by reorganized debtors against Jackson Walker. As set forth above, they appear to be deciding not to pursue matters. I am aware of only two instances in which creditors have voiced complaints and indicated their desire to move forward. The problem in those instances is that the confirmed chapter 11 plans may bar the creditors from seeking independent relief. Because these kinds of breaches should not be allowed without scrutiny, I believe that it is appropriate for the Court to conduct an inquiry and determine an appropriate remedy.

### Recommendation

I recommend that an inquiry be commenced under Rule 6.

Sincerely,

Marvin Isgur

c.  Nathan Ochsner, Clerk of Court

    S.D. Tex. Bankruptcy Judges